UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ISIDORA PEJOVIC, CHAEE BEAN KANG,
ALBA SALA HUERTA, and CHASSIDY KING,
individually and on behalf of all those similarly
situated, and GORDON GRAHAM,

        Plaintiffs,

      v.                                    1:17-CV-1092
                                             (TJM/DTS)

STATE UNIVERSITY OF NEW YORK AT
ALBANY, and MARK BENSON,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**THOMAS J. McAVOY**
**Senior United States District Judge**

**DECISION and ORDER**

Before the Court are Defendants' Motion to Dismiss and Plaintiffs' motion for summary judgment. See dkt. #s 16, 29. The parties have briefed the issues and the Court had determined to decide the matter without oral argument.

## I.    BACKGROUND

Plaintiffs Isidora Petrovic, Chaee Bean Kang, Alba Sala Huerta, and Chassidy King, who are former women's tennis players at the State University of New York ("SUNY") at Albany, and their former coach, Gordon Graham, brought this action to redress alleged discrimination by Defendants SUNY Albany and SUNY Albany's Athletic Director, Mark Benson. See Complaint ("Compl."), dkt. # 1, at ¶¶ 1-2.

At the time of the events that give rise to this action, Plaintiff Graham was in his fifth year as head coach of the women's tennis team at SUNY Albany and had led the team to

the America East Conference championship. Id. at ¶ 23. On March 23, 2016, Defendant Benson told Plaintiff Graham that SUNY Albany intended to terminate the women's tennis team following the American East Conference Championship tournament. Id. at ¶¶ 60. Plaintiff Graham was surprised; Defendant Benson instructed Graham not to tell anyone about SUNY Albany's decision until the University had given its planned press release. Id. The following morning, Plaintiff Graham defied Benson's orders and told the women's tennis team about SUNY Albany's decision to terminate the program. Id. at ¶ 61. The players and Plaintiff Graham met with Defendant Benson. Id. After the meeting Benson screamed and threatened Graham. Id.

Following the termination of the women's tennis team, Plaintiff Graham was given "meaningless administrative tasks and no professional coaching opportunities." Id. at ¶ 63. Graham alleges Defendant Benson's Deputy Jerry Koloskie told Graham that if he did not like the assignments he was given, "they could always force [him] to do a 9 to 5 boring job taking attendance in the 'Bubble.'" Id.

Plaintiff Graham alleges Defendant Benson made discriminatory and deprecating comments to athletic department staff and to an alumna regarding Graham's age and readiness for retirement, telling some of them Graham was "old enough to retire." Id. at ¶ 64. Defendant Benson asked Plaintiff Graham how old he was. Id. In a meeting with senior staff, Defendant Benson described the situation regarding the termination of the women's program and told those in attendance that Graham is "old enough to retire now." Id.

In July 2016, Defendant SUNY Albany notified Graham that his contract would not be renewed when it expired on August 14, 2017. Id. at ¶ 65. Plaintiff Graham asserts he

2

received excellent annual reviews and led the team to championships.  Id. at ¶ 63.

In November 2016, Plaintiff Graham filed a complaint with the OCR under Title IX. Id., at ¶ 66.  The OCR notified Graham that it was opening an investigation into his complaint.  Id.  The OCR found SUNY Albany to be in violation of Title IX.  Id. at ¶ 50. OCR found that, separate and apart from the historical and ongoing violation of Title IX by Defendant SUNY Albany, the act of terminating  the varsity women's tennis program violated Title IX.  Id.  This was not the first time that SUNY addressed inequitable access to athletic opportunities for men and women.  Id. at ¶ 110.  On August 26, 1994, SUNY Albany became subject to a Stipulation and Order (the "Stipulation") from the New York Supreme Court, Albany County.  Id.  The Stipulation directed SUNY Albany to comply with Title IX in athletics.  Id.

Defendants filed a motion to dismiss Plaintiff Graham's substantive claims, as well as claims by all Plaintiffs which are based on the 1994 Stipulation and all claims that seek punitive damages. After the parties briefed those issues, Plaintiffs filed a motion for summary judgment, which alleges that findings by the OCR entitle them to judgment.  The parties have also briefed those issues, bringing the case to its present posture.

## II.     STANDARD OF REVIEW

### A.     Motion to Dismiss

The Defendants have filed a motion to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendants argue Plaintiff has not stated a claim upon which relief could be granted, even if all factual allegations in the complaint were proved true.  In addressing such motions, the court must accept "all factual allegations in the

complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." <u>Holmes v. Grubman</u>, 568 F.3d 329,335 (2d Cir. 2009). This tenet does not apply to legal conclusions. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662,678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Id.</u> (quoting <u>Bell Atl. V. Twombly</u>, 550 U.S. 544,570 (2007)).

### B. Motion for Summary Judgment

Plaintiffs seek summary judgment. It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, <u>see</u> <u>Tenenbaum v. Williams</u>, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence

4

of a factual dispute that a reasonable jury could resolve in his favor.  Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A party opposing a properly

supported motion for summary judgment may not rest upon "mere allegations or denials"

asserted in the pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d

Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v.

Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

## III.    DISCUSSION

### A.    Motion to Dismiss

#### i.    Graham's Title IX Claims against Defendants

Plaintiff Graham alleges Defendant violated his rights under Title IX by terminating

the women's tennis team.  He avers that "[t]he unlawful termination of the varsity

intercollegiate women's tennis team by" SUNY "intentionally and wrongfully discriminated

against" him "on the basis of the sex of the women student-athletes he coached, causing

him irreparable harm and injury."  Comptl. at ¶ 81.   Defendants argue that Graham has

failed to state a claim under Title IX because the Complaint does not allege that Graham

faced discrimination because of *his* sex, but only because of the sex of his players.

Defendants also contend that Graham has no Title IX retaliation claim.  According to

Defendants, Graham claims to have engaged in protected activity by filing a complaint with

OCR in November 2016, but SUNY notified him in July 2016 that his contract would not be

renewed.  Graham's termination could not have been in retaliation for an act that had not

yet occurred.[1]

---

[1] Plaintiffs disclaim any intention to assert a Title IX retaliation claim.  Graham could
not prevail if he did.  A party may bring a Title IX retaliation claim.  Albany College of

Title IX provides that, absent several exceptions: "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal Financial Assistance[.]" 20 U.S.C. § 1681(a). The statute "prohibits sexual discrimination . . . by federally-funded educational institutions." Hayut v. State Univ. of N.Y., 352 F.3d 733, 749 (2d Cir. 2003). "Title IX is enforceable through an implied private right of action." McCormick v. Sch. Dist. of Mamaroneck, 370 F.3d 275, 288 (2d Cir. 2004) (citing Cannon v. University of Chicago, 441 U.S. 677 (1979)). A party bringing at Title IX sex-discrimination claim must offer "the same kind of proof required in a Title VII sex-

---

Pharm. of Union Univ. v. Papelino, 633 F.3d 81, 91 (2d Cir. 2011). A prima facie retaliation claim under Title IX requires a plaintiff to allege "(1) protected activity by the plaintiff; (2) knowledge by the defendant of the protected activity; (3) adverse school-related action; and (4) a causal connection between the protected activity and the adverse action." Id.

The facts alleged in the Plaintiffs' Complaint demonstrate that a retaliation claim cannot exist. Plaintiff alleges that Graham became a "whistleblower" when he filed "an official complaint with the OCR." Complt. at ¶ 82. The Complaint also alleges that Defendant Mark Benson, Albany's Athletics Director, at some time during the 2015-2016 school year decided to terminate the women's tennis program without informing Graham. Id. at ¶¶ 52-57. He did not inform Graham of this decision. Id. at ¶ 57. Indeed, Plaintiffs' Complaint describes the announcement that the team was cancelled on March 23, 2016 came as a "surprise" to Benson and the team members. Id. at ¶ 60. The Complaint alleges that, after the announcement, "Graham was given only meaningless administrative tasks and no professional coaching opportunities" and threatened with an even more boring assignment if he complained about those jobs. Id. at 63. Following cancellation of the tennis program, Plaintiffs allege, Defendant Benson told others that Graham was "'old enough to retire,'" stripped him of all duties, and directed to counsel his former players on how they should "'transition from being student athletes to being merely students.'" Id. at ¶ 64. When these attempts at "persuasion" failed, Defendant in July 2016 declined to renew Graham's contract, despite excellent reviews. Id. at ¶ 65. Graham filed his OCR complaint under Title IX in November 2016.

These allegations demonstrate that any protected activity Graham could claim occurred after the decision to end his employment.

discrimination claim." Papelino, 633 F.3d at 89.[2]  In the context of an employment dispute, as here, a plaintiff would need to show: "(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that he adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Sassaman v. Gamache, 566 F.3d 307, 312 (2d Cir. 2009).  "Proof of discriminatory intent is necessary to state a disparate treatment claim under Title VII." Yusuf v. Vassar College, 35 F.3d 709, 714 (2d Cir. 1994).

At issue here is whether Plaintiff has stated a claim under Title IX.  Defendants' argument is that he cannot assert a claim because the sex discrimination he identifies was directed not at him, but at the SUNY Albany's women's tennis players.[3]  The Court

_____

[2]Courts in this Circuit have disagreed whether an individual plaintiff who is an employee can bring a Title IX claim alleging sex discrimination.  See, e.g., Kohlhausen v. SUNY Rockland Cmty. College, No. 7:10cv3168, 2011 U.S. Dist. LEXIS, at *35 (S.D.N.Y., Feb. 9, 2011) (Title IX provides a private right of action for employment discrimination); Vega v. State Univ. of N.Y. Bd. of Trustees, 2000 U.s. Dist. LEXIS 4749, at *8-9 (S.D.N.Y., Apr. 12, 2000) (no private right of action for employment discrimination under Title IX); Burrell v. City Univ. of New York, 995 F.Supp. 398, 408 (S.D.N.Y. 1998) ("the remedies of Title IX are limited to student plaintiffs, and Title VII is meant to offer the exclusive remedy for employment discrimination based on sex."); Henschke v. New York Hospital-Cornell Medical Center, 821 F.Supp. (S.D.N.Y. 19 ) ("a private right of action for employment discrimination exists under Title IX separate and apart from Title VII and without regard to the availability of the Title VII remedy."); AB v. Rhinebeck Cent. Sch. Dist., 224 F.R.D. 144, 153 (S.D.N.Y. 2004) (employee of school district receiving federal funds may bring discrimination action). The Court agrees that a plaintiff may bring such a claim.

[3]Plaintiffs point the Court to a series of decisions surrounding the decision by Quinnipiac University to terminate its women's volleyball team.  See, e.g., Biediger v. Quinnipiac Univ., 616 F.Supp.2d 277 (D. Conn. 2009); Biediger v. Quinnipiac Univ., No. 3:09cv621, 2010 U.S. Dist. LEXIS 5004 (D. Conn., May 20, 2010); Biediger v. Quinnipiac Univ., No. 3:09cv621, 2010 U.S.Dist. LEXIS 73143 (D. Conn., July 21, 2010); Biediger v. Quinnipiac Univ., 691 F.3d 85 (2d Cir. 2012).  These cases do not stand, however, for the proposition that a male coach may bring a case for damages based on discrimination

recognizes that, under the anti-discrimination laws, "the ultimate issue is the reasons for the *individual plaintiff's* treatment, not the relative treatment of different *groups* within the workplace." Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) (emphasis in original). As a general matter, Graham could not assert a Title IX claim premised on the discrimination that others experienced. At the same time, however, Title IX prohibits discrimination "on the basis of sex." 20 U.S.C. § 1681(a).

The Court does not read this case to be one where Graham asserts a claim based on injuries faced only by others. The Court takes Graham's claim to be that he, too, suffered gender discrimination because of the cancellation of the women's tennis program. Graham's argument is that he was a victim of SUNY Albany's sex discrimination, which cost him his job coaching women. At least one court in this Circuit has addressed the issue of whether a male coach can bring a Title IX discrimination claim on his own behalf arising out of Title IX violations affecting a women's sports program. See Morris v. Fordham Univ., 2004 U.S. Dist. LEXIS 7310, at *10-11 (S.D.N.Y., Apr. 27, 2004). Plaintiff was the head coach of the women's basketball team at Forham University.

─────────────────────

experienced by his female players. Instead, the district court in Biediger found that Quinnipiac had violated Title IX "by failing to afford equal participation opportunities in varsity sports to female students" and enjoined any future discrimination. Biediger, 691 F.3d at 91. The dispute was about how the Court calculated disparities in access to athletic opportunities, not about whether a particular coach had experienced discrimination entitling him to damages. The Court of Appeals affirmed the conclusions of the lower Court enjoining discrimination. Id. at 108. Whatever relief the female tennis players seek in this case, Defendant Graham seeks "an award of money damages" for "lost professional status and reputation, lost opportunities for employment and professional acclaim, lost past and future employment, lost income and benefits, lost compensation and benefits, humiliation, emotion pain and distress, lost self-esteem and other injuries." Complt. at ¶ 83. Nothing in the Quinnipiac cases addressed whether a coach can obtain such money damages when his charges have been the victim of sex discrimination.

8

Id. at *2.  He alleged disparate treatment and impact because of "allegedly inferior resources and opportunities" provided to the women's basketball team.  Id. at *2.  The court concluded that "[g]ender-based employment discrimination by educational programs receiving federal financial support comes within the prohibition of Title IX."  Id. at *6. Defendant sought dismissal, arguing in part that "plaintiff's Title IX claim is premised not on plaintiff's gender, but on the gender of the students he coached."  Id. at *7.  The court rejected that argument, noting that "[t]he prohibition of discrimination 'on the basis of sex' is broad enough to encompass a prohibition of discrimination against plaintiff on the basis of the sex of the players whom he coached."  Id. at *11 (quoting 20 U.S.C. § 1681(a)).

The Court is persuaded by the reasoning in the Morris case.  Title IX is aimed at preventing sex discrimination at federally supported institutions.  Title IX provides a private right of action for discrimination.  Plaintiff alleges sex discrimination, and injury thereby.  At least at this stage in the litigation, the Court must reject Defendants' argument that Plaintiff has not alleged sex discrimination that injured him.  By Defendants' logic, Graham could only have a claim if he were a woman coaching women.  Ruling that way would constrict the definition of "on the basis of sex" unnecessarily.  As such, the motion will be granted with respect to any retaliation claim that Graham may raise, but will be denied with respect to his Title IX discrimination claim.[4]

─────────────────────

[4]Defendants point to Nungesser v. Columbia Univ., 169 F.Supp.3d 353, 364 (S.D.N.Y. 2016), for the proposition that a sex-discrimination claim must be based on mistreatment because of the plaintiff's sex, not the sex of someone else.  Nungesser involved claims of discrimination against Columbia University by a male student who claimed harassment and inequitable treatment in connection with allegations by a female student that he had sexually assaulted her.  Id. at 353-54.  The Court rejected plaintiff's claim that he had suffered discrimination on the basis of sex in violation of Title IX.  The Court concluded:

ii.     **Section 1983 Age-Discrimination Claim**

Plaintiff Graham also asserts a claim of age discrimination against Defendant Benson under 42 USC § 1983.  As a preliminary matter, Defendants argue that Graham cannot maintain a Section 1983 age-discrimination claim because such a claim could have been brought under the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1).  To permit Graham to proceed on an age-discrimination claim under Section 1983 would allow him to avoid the limits on liability and procedural requirements of the ADEA.  To support this proposition, Defendants point to a Third Circuit case, Hildebrand v. Allegheny County, 757 F.3d 99, 110 (3d Cir. 2014), which found that "Congress intended the ADEA to be the exclusive remedy for claims of age discrimination in employment."  757 F.3d at 110.

The Court will deny the motion in this respect.  The Second Circuit has noted that "[i]t is an open question whether the ADEA preempts age discrimination claims under

_____

> [plaintiff's] argument rests on a logical fallacy.  He assumes that because the allegations against him concerned a sexual act that everything that follows from it is "sex-based" within the meaning of Title IX.  He is wrong.  Taken to its logical extreme, Nungesser's position would lead to the conclusion that those who commit, or are accused of committing, sexual assault, are a protected class under Title IX.  The statute does not permit that result.
>
> Title IX prohibits discrimination 'on the basis of sex.'  The word sex has two distinct meanings: "(1) the sum of the peculiarities of structure and function that distinguish a male from a female organism; gender.  (2) Sexual intercourse."  BLACK'S LAW DICTIONARY 1583 (Bryan Garner, et al., eds., 10th ed. 2014).  Anti-discrimination laws, such as Title VI, Title VII, and Title IX, are concerned with the first definition–the gender status conferred by a particular set of characteristics.  Implicit in Nungesser's claim is the belief that sex-based discrimination, for the purposes of Title IX, means "based on the act of sex" rather than "gender."  As both the case law and logic show, this cannot be correct.

Id. at 364.  This case is different from Nungesser.  Graham alleges discrimination on the basis of gender–perceptions about the essential nature of women–not sexual acts.  Defendants' argument is unavailing in this respect.

10

Section 1983" in this Circuit. <u>Piccone v. Town of Webster</u>, 511 Fed. Appx. 63, n.1 (2d Cir. 2013). Still, "courts within the Second Circuit have consistently held that the ADEA does not preclude age discrimination actions brought pursuant to Section 1983, so long as such claims are brought to vindicate distinct violations of constitutional rights." <u>Wu v. Metro-North Commuter R.R. Co.</u>, No. 14cv7015, 2015 U.S. Dist. LEXIS. 126882, at *24 (S.D.N.Y., Sept. 22, 2015) <u>see also</u>, <u>Reed v. Garden City Union Free Sch. Dist</u>, 987 F.Supp.2d 260, 264 (E.D.N.Y. 2013) (permitting Plaintiff to bring an age-discrimination complaint pursuant to Section 1983); <u>Weinstein v. Garden City Union Free Sch. Dist.</u>, No. CV 11-2509, 2013 U.S. Dist. LEXIS, at *57 (E.D.N.Y., Sept. 20, 2013) ("A Section 1983 claim may be predicated on age or religion as well as other protected classes so long as the claim is based on a distinct violation of a constitutional right.").

Defendants argue that Plaintiff Graham has failed to state a Section 1983 equal protection claim against Benson in any case.[5] The Court analyzes an age-discrimination

_____

[5]Defendants argue that Benson cannot be liable on an equal protection claim because "[a]ge is not a protected class under the Fourteenth Amendment's Equal Protection Clause.'" (quoting <u>Shein v. New York City Dep't of Educ.</u>, No. 15-CV-4236, 2016 WL 676458, at *6 (S.D.N.Y., Feb. 16, 2016)). For this proposition, <u>Shein</u> relied on <u>Kimel v. Florida Bd. of Regents</u>, 528 U.S. 62, 83 (2000). The Court in <u>Kimel</u> did not address the question of whether a state actor could be sued for age discrimination under the equal protection caluse. <u>Kimel</u>, 528 U.S. at 83. The question before the Court was whether Congress had properly abrogated state sovereign immunity, thus permitting a state to be sued for age discrimination as an equal protection violation. The Court found that "[o]ld age does not define a discrete and insular minority because all persons, if they live out their normal life spans, will experience it. Accordingly . . . age is not a suspect classification under the Equal Protection Clause." <u>Id.</u> As such, a State could "discriminate on the basis of age without offending the Fourteenth Amendment if the age classification in question is rationally related to a legitimate state interest." <u>Id.</u> The Court's holding emphasized that "[w]e hold only that, in the ADEA, Congress did not validly abrogate the States' sovereign immunity to suits by private individuals" and that such suits under the ADEA could not go forward. <u>Id.</u> at 91. <u>Kimel</u> does not answer the question of whether a defendant may be sued individually as a state actor for discrimination on the basis of age.

claim brought as a Section 1983 equal protection claim using "the familiar *McDonnell Douglas* framework." <u>Back v. Hasting on Hudson Union Free Sch. Dist.</u>, 365 F.3d 107, 123 (2d Cir. 2004). That framework requires that "a plaintiff must first establish a *prima facie* case of discrimination by showing that '(1) [he] is a member of a protected class; (2) [he] is qualified for [his] position; (3) [he] suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.'" <u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d 72, 83 (2d Cir. 2015) (quoting <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 42 (2d Cir. 2000)). At the pleading stage, "a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas* . . . to defeat a motion to dismiss." <u>Id.</u> at 84. Instead, since "'a temporary presumption of discriminatory motivation' is created under the first prong of the *McDonnell Douglas* analysis, a plaintiff 'need only give plausible support to a minimal inference of discriminatory motivation.'" <u>Id.</u> (quoting <u>Littlejohn v. City of New York</u>, 795 F.3d 297, 307, 311 (2d Cir. 2015)).

The Court finds that Plaintiff Graham has pled facts sufficient to make his claim to relief against Defendant Benson under Section 1983 plausible. Plaintiff alleges that he was sixty-five at the time of the events in question. Complt. at ¶ 87. He also alleges superior performance as a tennis coach, having won numerous titles, including titles at

---

The Defendants' proposed reading would foreclose any suits against private actors based on age discrimination, even though the Second Circuit has declared this an "open question." Here, Plaintiff Graham does not seek to impose liability for age discrimination on the State in violation of sovereign immunity, and he is therefore not foreclosed from his claims by the cases Defendants cite. In any case, the Court–as discussed below–agrees that State sovereign immunity applies to this claim. As such, only claims against Benson in his individual capacity could survive the motion to dismiss. Immunity would protect Benson in his official capacity.

SUNY Albany.  Defendant did not renew Graham's contract, and he alleges that the circumstances warranted such renewal.  As to whether the circumstances permit at least a limited inference of discriminatory intent, the Court finds the allegations sufficient in this respect as well.  Plaintiff alleges that Benson asked Graham how old he was when he announced termination of the tennis team and told others at the meeting that Graham was "close to retirement."  <u>Id.</u>  Benson also told a former SUNY Albany tennis player who questioned the decision to terminate the team that Graham "could 'retire if he wants to,' since he was 'old enough.'" <u>Id.</u> at ¶ 92.  At this point in the litigation, such allegations are sufficient to create an inference that Benson's motivation in terminating Plaintiff was his age.  The motion will be denied in this respect.

Defendants further argue that any claim against Benson in his official capacity must be dismissed as a claim against the State which is barred by sovereign immunity. "Neither a state nor its officials acting in their official capacities are persons under 42 USC § 1983." <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58,71 (1989).  "[F]or Eleventh Amendment purposes, SUNY is an integral part of the government of the State of New York and when it is sued the State is the real party." <u>Garcia v. State Univ. Of N.Y. Health Scis. Ctr.</u>, 280 F.3d 98,107 (2d Cir. 2001).  "In so far as [plaintiff] is suing the individual [defendant] in [his] official capacit[y], [plaintiff] is seeking damages from New York, and the Eleventh Amendment therefore shields them to the same extent that it shields SUNY." <u>Id.</u> "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." <u>Id.</u>  To the extent that Plaintiff Graham sues Defendant Benson in his official capacity, then, the claim must be dismissed unless SUNY Albany somehow waived that immunity.

Plaintiffs could conceivably argue that SUNY Albany waived sovereign immunity under the Eleventh Amendment in the 1994 Stipulation. "The test for determining whether a State has waived its immunity from a federal-court jurisdiction is a stringent one." Atascadero State Hosp. V. Scanlon, 473 U.S. 234,241 (1985). "[T]he State will be deemed to have waived its immunity only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." Atascadero, 473 U.S. at 240. "[T]he mere receipt of federal funds cannot establish that a State has consented to suit in the federal court." Id. At 247.

The Court finds that the language of the 1994 Stipulation does not demonstrate an intention by the State of New York to waive its immunity from suit in federal court. The language of the 1994 Stipulation does not explicitly state SUNY Albany intended to waive its immunity, nor does the language by overwhelming implication leave no room for any other reasonable construction. The language of the 1994 Stipulation merely provides that Albany will reinstate the men's wrestling team with proper funding. Furthermore, where Albany decides to terminate varsity programs proper notice will be given and changes shall be made in accordance with proper university procedure and federal law. The Court finds this language insufficient to constitute a waiver of sovereign immunity under the Eleventh Amendment. The Court will dismiss any claim against Defendant Benson in his official capacity in this respect.

### iii.    New York Human Rights Law/Declaratory Judgment

Defendants next contend that Plaintiff Graham's claim against SUNY Albany under the New York Human Rights Law is barred on sovereign immunity grounds. In any case, they insist, Plaintiff has failed to state a claim in this respect. Defendants also argue that

14

Count V of the Complaint, which seeks a declaratory judgment that SUNY Albany

breached the Stipulation, should be dismissed.  The Plaintiffs have notified the Court that

they intend to abandon these Counts.  The Court will therefore grant the motion as

unopposed with respect to Counts IV and V of the Complaint.

### iv.  Punitive Damages

Finally, Defendants seek dismissal of Plaintiffs' claims for punitive damages under

Title IX.  They argue that punitive damages are unavailable in private actions seeking to

enforce that Title.  In addition, Defendants contend, punitive damages are unavailable

against Defendant Benson in his official capacity, nor are they available against Benson

for any claim of age discrimination.  Plaintiffs respond that punitive damages are available

to them under Title IX, and that punitive damages are available against Defendant Benson

for age discrimination in his individual capacity as those claims are Section 1983 claims.

They agree, however, that no punitive damages are available for claims barred by

sovereign immunity or claims against Benson in his official capacity.

The Court agrees with the Defendants that punitive damages are unavailable

under Title IX.  The Supreme Court has noted that Title IX is "[p]atterned after Title VI of

the Civil Rights Act of 1964[.]"  N. Haven Bd. of Educ. v. Bell, 456 U.S. 512, 514 (1982).

In Barnes v. Gorman, 536 U.S. 181, 183 (2002), the Court addressed the question of

whether punitive damages were available under Section 202 of the Americans with

Disabilities Act and Section 504 of the Rehabilitation Act.  In answering that question, the

Court noted that "the remedies for violations of § 202 of the ADA and § 504 of the

Rehabilitation Act are coextensive with the remedies available in a private cause of action

brought under Title VI of the Civil Rights Act of 1964."  Id. at 185.  The Court relied in part

15

on Title IX in reaching this conclusion.  The Court concentrated on the contract-like nature of claims conditioned on a state agency's acceptance of federal funds.  As with Title IX, the Court found, the relief available against recipients of federal funding consists only of those remedies of which "the funding recipient is *on notice* that, by accepting federal funding, it exposes itself to liability of that nature."  Id. at 187 (emphasis in original).  Such notice consists "not only" of "those remedies explicitly provided in the relevant legislation, but also to those remedies traditionally available in suits for breach of contract."  Id.  Such remedies include compensatory damages and injunctive relief.  Id.  "[P]unitive damages . . . are generally not available for breach of contract."  Id.  The Court concluded that since "punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act."  Id. at 189.  The Fourth Circuit Court of Appeals found that "the Supreme Court's conclusion in *Barnes* that punitive damages are not available under Title VI compels the conclusion that punitive damages are not available for private actions brought to enforce Title IX."  Mercer v. Duke Univ., 50 Fed. Appx. 643, 645 (4th Cir. 2002).

The Court is persuaded that the Supreme Court's logic concerning the interplay between the ADA, the Rehabilitation Act, Title VI, and Title IX does not permit the imposition of punitive damages in this case.  The Court notes that the Supreme Court used Title IX as an example of how the remedies for violation of Title VI were limited by the traditional remedies available in contract law.  Punitive damages are unavailable in most cases for contract breaches, and thus unavailable for violations Title VI, the Supreme Court found.  The exercise of federal power under Title IX is limited to those

institutions "receiving Federal financial assistance." 20 U.S.C. § 1681(a). If SUNY chose to decline federal assistance, Title IX's prohibitions on discrimination would not apply. In that sense, Title IX establishes a contractual relationship, and the logic limiting damages articulated in Barnes v. Gorman applies. Plaintiffs have been unable to point the Court to any cases that establish that punitive damages are available for violations of Title IX. Numerous courts have followed the Fourth Circuit's conclusion in Mercer and found that punitive damages are unavailable for Title IX violations. See, e.g., Benaquista v. Spratt, 217 F.Supp.3d 588, 607 (N.D.N.Y. 2016); Peterson v. New Eng. Inst. of Tech., No. 14-63-ML, 2014 U.S. Dist. LEXIS 79734, at *14 (Dist. R.I., June 9, 2014); Doe v. Fournier, 851 F.Supp.2d 207, 223 n.9 (Dist. Mass., 2012); Fachel-Rodriguez v. P.R. Dep't of Educ., 478 F.Supp.2d 191, 199 (Dist. P.R., 2007); C.M. v. Pemberton Twp. High Sch., No. 16-9456 (RMB/JS), 2017 U.S. Dist. LEXIS 11434, at * 18 (Dist. N.J., Jan. 27, 2017); Hooper v. North Carolina, 379 F.Supp.2d 804, 811 (M.D.N.C. 2005); Ayala v. Omogbehin, No. H-16-2503, 2016 U.S. Dist. LEXIS 175600, at *11 (S.D. Tx., Dec. 20, 2016); Minnis v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. College, 972 F.Supp. 2d 878, 889 (M.D. La. 2013). The motion will be granted in this respect.

Defendants argue as well that Plaintiff's claims for punitive damages against Defendant Benson on his Section 1983 age-discrimination claim must be dismissed because no punitive damages are available for age discrimination claims. Defendants cite to Johnson v. Al Tech Specialties Steel Corp., 731 F.2d 143 (2d Cir. 1984) for this proposition. Defendants are correct in this respect. See, e.g., Boise v. Boufford, 121 Fed. Appx. 890, 892 (2d Cir. 2005) ("this court has ruled that [punitive damages are] not available under the ADEA."). As explained, however, Plaintiff's claim is not one brought

pursuant to the ADEA, but one brought pursuant to 42 U.S.C. § 1983. "Punitive damages are available in a section 1983 case 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" Mathie v. Fries, 121 F.3d 808, 815 (2d Cir. 1997) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). Defendants do not assert that Plaintiff has failed to plead such conduct. They instead argue that punitive damages are unavailable on this claim, regardless of the conduct. Defendants are incorrect, and the motion will be denied in this respect.

### B. Plaintiffs' Summary Judgment Motion

Plaintiffs have filed a motion for partial summary judgment. They seek summary judgment on Count 1 of the Complaint, which alleges that SUNY Albany violated Title IX by terminating the women's tennis program and seeks injunctive relief and compensatory damages. They contend that OCR found in 2017 that Albany was in violation of Title IX, and that SUNY Albany entered into a Resolution Agreement with OCR rather than appeal those findings. According to the Plaintiffs, this evidence establishes that no question of fact exists on the tennis-playing Plaintiffs' Title IX claim. In support of their motion, they provide affidavits and evidence which indicate a disparity of opportunity for men and women in SUNY Albany's athletic department, and which indicate that a number of women on campus would like to join an intercollegiate rowing team. Defendants respond that no discovery has occurred in this case, and that the motion is therefore premature. Defendants intend to provide paper discovery and mandatory disclosures, undertake depositions of party and nonparty witnesses, and develop expert testimony. Moreover, Plaintiffs have proposed making the case a class action, and that issue has not yet been

18

joined. They also point out that SUNY-Albany's Resolution Agreement with OCR specifically disclaimed an admission of responsibility for discrimination against female athletes.

The law of Title IX with respect to the equal provision of athletic opportunities is complex and fact intensive. "Title IX provides, in relevant part, that '[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.'" Biediger, 691 F.3d at 92 (2d Cir. 2012) (quoting 20 U.S.C. 1681(a)). While IX contains "no mention of athletics programs . . . the Department of Education ("DOE") [has] interpreted Title IX to require recipients of federal financial assistance operating or sponsoring 'interscholastic, intercollegiate, club or intramural athletics' to 'provide equal athletic opportunity to members of both sexes.'" Id. (quoting 34 C.F.R. § 106.41(c)). Those regulations offer "a non-exhaustive list of factors relevant to determining whether equal athletic opportunities are available":

> (1) Whether the selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes; (2) The provision of equipment and supplies; (3) Scheduling of games and practice times; (4) Travel and per diem allowance; (5) Opportunity to receive coaching and academic tutoring; (6) Assignment and compensation of coaches and tutors; (7) provision of locker rooms, practice and competitive facilities; (8) Provision of medical and training facilities and services; (9) Provision of housing and dining facilities and services; (10) Publicity.

Id. (quoting 34 C.F.R. § 106.41(c)). "Title IX claims of sex discrimination in athletics fall into two categories based on the § 106.41(c) factors to which the claims are addressed: effective accommodation claims focus on § 106.41(c)(1), and equal treatment claims focus on § 106.41(c)(2)-(10)." Id.

Regulators assess whether a school is complying with the requirement to provide opportunities regardless of sex in three ways:

> (1) Whether the intercollegiate level participation opportunities for male and female students are provided in numbers substantially proportionate to their respective enrollments; or
> (2) Where the members of one sex have been and are underrepresented among intercollegiate athletes, whether the institution can show a history and continuing practice of program expansion which is demonstrably responsive to the developing interest and abilities of the members of that sex; or
> (3) Where the members of one sex are underrepresented among intercollegiate athletes and the institution cannot show a continuing practice of program expansion such as that cited above, whether it can be demonstrated that the interests and abilities of the members of that sex have been fully accommodated by the present program.

Id. at 92-93 (quoting 1979 Policy Interpretation, 44 Fed. Reg. 71,413,71,418 (Dec. 11, 1979)). Any of these three means can serve as a "safe harbor" from discrimination claims. Id. at 93. To determine whether representation is sufficient, regulators first count the number of "participation opportunities" available to athletes. Id. After completing that assessment, the analysis then turns to "whether the numbers are substantially proportionate to each sex's enrollment." Id. at 94. No exact formula exists. Id. Instead, "substantial proportionality is determined on a case-by-case basis in light of 'the institution's specific circumstances and the size of its athletic program.'' Id. Numbers are sufficient "if the number of additional participants necessar[ily] required for exact proportionality 'would not be sufficient to sustain a viable team." Id. (quoting Office of Civil Rights, U.S. Department of Education, CLARIFICATION OF INTERCOLLEGIATE ATHLETICS POLICY GUIDANCE: THE THREE PART TEST, at 4 (Jan. 15, 1996)). Schools are permitted "'flexibility and choice'" in these efforts to provide opportunities to students of both genders, "including by eliminating teams, placing caps on its rosters . . . or expanding . . .

20

athletic opportunities through new sports.'" Id. (quoting Letter from Stephanie Monroe, Assistant Sec'y for Civil Rights OCR, U.S. DOE, to Colleagues, at 4 (Sept. 17, 2008)).

No discovery has occurred yet in this case. "'The nonmoving party must have had the opportunity to discover the information that is essential to his opposition to the motion for summary judgment.'" Hellstrom v. United States Dep't of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000) (quoting Trebor Sportswear Co. v. The Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989) (internal quotations omitted)). "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." Id.

This is not one of the rarest of cases. The lengthy recitation of the standard for determining whether a Title IX violation recited above indicates that the question is a fact-specific one that requires investigation into a number of factors and detailed information. The Court lacks sufficient information at this point to answer the questions raised in this case, particularly because defenses exist even if the evidence indicates a persistent lack of equal places for male and female participation. A federal agency investigated the matter and found evidence of liability. Defendants deny that liability, and the findings of the agency are not sufficient to bypass the discovery process. The Court will therefore deny the motion for summary judgment.

Plaintiffs may of course renew their motion after the parties have conducted discovery.

## IV. CONCLUSION

For the reasons stated above, the Court will DENY Plaintiff's motion for summary judgment, dkt. # 29, without prejudice to renewal at an appropriate time. The Court will

21

GRANT Defendants' motion to dismiss, dkt. # 16, in part and DENY the motion in part, as follows:

    1.  The motion is GRANTED with respect to:

        a.  Any claim by Plaintiff Graham for Title IX retaliation;

        b.  Plaintiffs' Section 1983 claims against Defendant Benson in his official capacity;

        c.  Plaintiffs' claims brought pursuant to the New York Human Rights Law;

        d.  Plaintiffs' claims for declaratory judgment;

        e.  Plaintiffs' claims for punitive damages under Title IX; and

        f.  Plaintiffs' claims for punitive damages against Defendant Benson in his official capacity and against SUNY Albany under Section 1983.

    These claims are dismissed.

    2.  The motion is DENIED in all other respects.

IT IS SO ORDERED.

Dated:July 26, 2018

Thomas J. McAvoy
Senior, U.S. District Judge